UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**ISAAC GEORGE NEWMAN**          *          **DOCKET NO. 06-0146**

**VERSUS**          *          **JUDGE JAMES**

**LELAND D. CABLE, ET AL.**          *          **MAGISTRATE JUDGE HAYES**

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge are cross-motions for summary judgment filed by plaintiff, Isaac George Newman [doc. # 18], and defendants, Leland D. Cable and the City of Monroe [doc. # 21]. The motions have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons stated below, it is recommended that plaintiff's motion for summary judgment [doc. # 18] be **DENIED**, that defendants' motion for summary judgment [doc. # 21] be **GRANTED IN PART**, and that plaintiff's remaining state law claims be **DISMISSED**, without prejudice.

<u>Background</u>

In 1982, Isaac G. Newman began his employment with the City of Monroe in the Sewer Department. (Pl. Statement of Undisputed Facts, No. 5). He subsequently transferred to the city's Water Distribution Department in 1984. *Id*. at No. 7. In 1987, Newman obtained certifications in Biofiltrates, Class IV Water Treatment, and Water Collections II. *Id*. at No. 8. In 1990, he obtained certifications in Water Treatment III, Water Production IV, Water Distribution IV and Back Flow Prevention. *Id*. at No. 10.[1] The certifications entitled Newman to receive incentive pay from the city. *Id*. at No. 9. To maintain his water and sewerage

---

[1] *See also*, Def. Statement of Material Facts, No. 3.

certifications, Newman was required to attend sixteen hours of training annually in each discipline.  *Id*. at No. 11.  In 1996, Leland D. Cable became Newman's supervisor in the Water Distribution Department.  (Def. Statement of Material Facts, No. 2).[2]

On May 26, 2004, Cable sent a letter to the Louisiana "Office of Certification" requesting verification of certification levels for various city employees including himself, Isaac Newman, Danny Page, Ronald Hampton, and Steven Stone.  (Exhs. to doc. # 21, pg. 32).  On May 28, 2004, the Operator Certification Office for the Louisiana Department of Health and Hospitals replied that Cable and Hampton had renewed their certifications, that Stone was not due to renew until 2006, Page was not in the system, and that Newman had not renewed his certification because he had obtained only eight hours.  *Id*. at pg. 33.

In a June 17, 2004, letter to Richard Moore, the City of Monroe's Interim Public Works Director, Cable informed Moore of the certification status for the five employees queried in his May 26, 2004, letter to the Operator Certification Office.  (Pl. Exh. G).  Cable stated that Page and Newman no longer held operator certification, and thus they were no longer eligible for incentive pay under the union contract.  *Id*.  Cable opined that Page and Newman's incentive pay should be stopped immediately.  *Id*.

In a July 20, 2004, letter to the City of Monroe Water Department, Newman wrote that he had been informed by Cable that the state certification board had voided his certification for the 2004 year.  (Def. Exh. F).  Newman further stated that Cable, as his supervisor, failed to record and report all of his training hours to the certification board.  *Id*.  Newman emphasized that he had proof of his training and that on July 23, 2004, he would substantiate his claim with Stacy Williams of the certification board and pay the reinstatement fee.  *Id*.

_____

[2]  *See also*, Pl. Statement of Undisputed Facts, No. 14.

2

However, in a September 17, 2004, letter to Newman, Stacy Williams[3] wrote that after reviewing the sign-in sheets for the 2002-2003 renewal cycle, the agency found that Newman did not have enough hours to qualify for the 2004-2005 period.  (Pl. Exh. G).[4]  The review had uncovered seven additional hours of training obtained by Newman during the qualification period, but Newman was still one hour short of the requisite sixteen hours.  *Id*.  The letter stated that "Mr. Newman thought that he would receive two hours for the December 2002, training, but instead everyone was credited with one hour."  *Id*.  The letter concluded that Newman's certification was no longer valid, and that to become re-certified, he would have to re-take the appropriate examinations.  *Id*.

On October 27, 2004, Cable wrote a letter to Newman in his capacity as Water Distribution Superintendent for the City of Monroe.  (Pl. Exh. G).  The letter stated that the Louisiana Department of Health and Hospitals had verified that Newman had not obtained the requisite number of continuing education hours to maintain his certification past January 1, 2004.  *Id*. at pg. 36.  As a result, Newman was no longer entitled to incentive pay, and he was required to return any incentive pay received after the loss of certification.  *Id*.[5]  The letter demanded reimbursement of $ 1,500.00 for incentive pay erroneously credited to Newman from January 1 to July 1, 2004, and any funds received by Newman for his travel to Alexandria, Louisiana on

---

[3]  Williams was the Acting Administrator for the Operator Certification Unit of the Louisiana Department of Health and Hospitals.

[4]  Leland Cable was sent a copy of the letter.

[5]  The letter quoted Section 10 of Article XVI of the Local 2388 bargaining agreement which provides that "[a]ny employee who loses his or her class certification shall lose his or her eligibility for incentive pay and shall be required to return any applicable incentive pay received or accrued after the date of the loss of certification.  It shall be his or her responsibility to pay all costs associated with re-certification."  *Id*.; *see also*, Def. Exh. D.

July 23, 2004, ostensibly for the purpose of re-taking certification examinations.  *Id*.[6]

On December 2, 2004, Newman completed a grievance fact sheet challenging Cable's decision to only award one hour of continuing education credit at the Christmas program of the Water Conference Meeting.  (Pl. Exh. G).[7]  Newman alleged that this action enabled Cable to assert that Newman's certification was no longer valid.  *Id*.  Newman asked for his certification to be reinstated.  *Id*.  Newman also penned a Letter of Grievance to the City of Monroe Administration Department.  *Id*.  In the letter, Newman represented that he was not on top of his continuing education hours because he had surgery on January 19 and 23, 2004.  *Id*.  Newman further stated that Cable had told him that he already had the requisite sixteen hours to retain his certification.  *Id*.  He claimed that Cable took one hour of certification because the Turner Brothers sang at their Christmas program.  *Id*.

On December 28, 2004, "Annette" in "Personnel" sent a memorandum to Newman reiterating that he would have to reimburse the city $ 1,500.00 for "Certification Pay."  (Pl. Exh. G).  Annette informed Newman that on January 14, 2005, the city would begin deducting $125.00 from Newman's paychecks until the amount had been repaid in full.  *Id*.

On January 3, 2005, Cable issued a written warning for Newman's repeated failure to be in the front office by 7:05 A.M. each morning.  (Def. Exh. N).  The written warning further stated that because Newman was a supervisor, his tardiness was hindering his crew from starting their work in a timely manner.  *Id*.  Cable also issued a written "verbal" warning on January 3, 2005, for Newman being late for five days during the payroll period ending December 29, 2004.  (Def.

---

[6]  The letter stated that Newman's incentive pay equaled $ 250.00 per month.  *Id*. Newman believes that his incentive pay was $ 350.00 per month.  (Newman Depo., pg. 38; Pl. Exh. A).

[7]  This would have been for either the 2002 or 2003 Christmas programs.

Exh. M).

On January 26, 2005, Newman completed an Official Grievance Form.  (Def. Exh. E).
He indicated that he had been sent a letter stating that he had received "certification" pay that he
was not entitled to receive.  *Id.*  He asked that his "certification" pay be reinstated with all
"money adjustments."  *Id.*  The grievance was presented to a management representative on the
following day.  *Id.*

Leland Cable addressed Newman's grievance in a January 28, 2005, letter addressed to
the A.F.S.C.M.E. Local 2388 Representative, John Smith.  (Def. Exh. E).  Cable noted that the
two year certification period at issue extended from January 1, 2002, until December 31, 2003.
*Id.*  He further stated that Newman needed 40 "contact" hours to maintain all five of his
certifications, and that the City of Monroe should not be responsible for any excess certification.
*Id.*  Cable was puzzled by Newman's challenges to statements and events that occurred in 2004
relative to certification hours, because the relevant qualification period for 2004 certification was
the preceding two years.  *Id.*  Cable further stated that he had no control over the continuing
education hours received at meetings of the Northeast Region of the Louisiana Conference on
Water, Sewerage, and Industrial Waste.  *Id.*  The approved hours for the bi-monthly meetings of
the Conference had been sent out to the members.  *Id.*  The members were advised that they
would receive one hour of credit for the December 2, 2002, Christmas program and two hours of
credit for the December 1, 2003, meeting.  (Def. Exh. P).

On or about February 4, 2005, Cable affixed a copy of Newman's grievance and Cable's
response thereto to a bulletin board in the office of water distribution.  (Cable Affidavit; Def.
Exh. K).  Cable stated that he posted the grievance and response to ensure that Newman received
it.  *Id.*  Upon noticing the bulletin board, Newman confronted Cable about posting the grievance

and the associated response.  (Newman Depo. pg. 23; Pl. Exh. A).  According to Newman, Cable became upset, snatched the grievance out of his hand, pushed Newman against the wall, and told him that he was fired.  *Id*.  On February 7, 2005, Cable signed a document authorizing Newman's discharge due to insubordination, effective February 4, 2005.  (Pl. Exh. J).  However, Newman's personnel filed contains no evidence of a status change or termination notice.  (Affidavit of Annette Bradford, Human Resources Specialist for the City of Monroe; Def. Exh. I).  Newman also did not lose any pay as a result of this pseudo-discharge.  (Newman Depo., pg. 46, Def. Exh. B).

On September 13, 2005, Cable filed a disciplinary violation against Newman for "substandard work" because Newman excavated an underground valve in the wrong location.  (Pl. Statement of Undisputed Facts No. 43; Def. Statement of Material Facts, No. 8).  The error caused a loss of money and labor to the city, and Newman was suspended for one week without pay.  (Affidavit of Cecil Janway, Jr., Def. Exh. C).[8]

On September 19, 2005, Newman completed a Grievance Fact Sheet.  (Pl. Exh. H).  He recited that he had been suspended for five days without pay because a member of his crew had broken a mainline, and he had tried to break out a valve in the street that had not been located.  *Id*.  He opined that he had been subjected to unfair treatment and harassed by Leland Cable.  *Id*.  Newman also filed an Official Grievance Form wherein he stated that this was not his second offense, and thus he should not have been laid off.  *Id*.[9]  Newman believed that he was written up because of an "act of conspiracy."  *Id*.

On September 26, 2005, Leland Cable determined that the grievance lacked merit.

---

[8]  Janway is the Director of Public Works for the City of Monroe.  *Id*.

[9]  Newman presumably meant that he should not have been suspended for five days.

(September 26, 2005, letter to John Smith; Def. Exh. O).  Cable addressed Newman's argument that this was not his second offense by referring to Newman's previous disciplinary record from January 3, 2005.  *Id*.

The record contains an unsigned letter dated October 14, 2005, addressed to "whom this may concern," requesting that the grievance be "taken to another level."  (Def. Exh. O).  On October 17, 2005, Tom Janway, Public Works Director, wrote a letter to Newman advising him that the grievance that he submitted on October 17, 2005, did not comply with Article VI, Section 2 of the Grievance Procedure in the Local # 2388 Labor Agreement.  *Id*.  On November 2, 2005, Cable issued Newman a memorandum informing him that a hearing regarding his grievance had been set for November 7, 2005.  *Id*.  The memorandum further advised Newman that he needed to be present at the hearing.  *Id*.[10]  On November 10, 2005, Tom Janway issued a letter finding no evidence to reverse Cable's recommendations regarding Newman's actions on September 13, 2005.  *Id*.  Accordingly, Newman's grievance was denied.  *Id*.

On January 27, 2006, Newman filed the instant complaint under 42 U.S.C. §§ 1983, 1985, and the Fourteenth Amendment of the United States Constitution against the City of Monroe, and Leland D. Cable, individually, and as superintendent of Monroe Water Distribution.  Plaintiff sets forth seven claims alleging various violations of the Fourteenth Amendment to the U.S. Constitution and Article 1 of the Louisiana Constitution.  He further alleges that Cable is liable for assault and battery and intentional infliction of emotional distress under state law.  Plaintiff contends that as a result of defendant's actions he has suffered lost wages, humiliation, mental distress, and irreparable harm.  He seeks an award for lost wages, exemplary and punitive damages, reasonable attorney's fees, and costs.

---

[10]  Newman's union representative was also invited to attend.  *Id*.

7

On October 11, 2007, plaintiff filed the instant motion for summary judgment seeking a determination that defendants violated his civil rights and are liable for resulting damages.  On October 12, 2007, defendants filed a reciprocal motion for summary judgment seeking dismissal of plaintiff's claims with prejudice.  Briefing is now complete, and the matters are before the court.

### Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law.  F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence such that a reasonable jury could return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).  Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a

mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

<u>Analysis</u>

Plaintiff's first and second claims take issue with the February 2005 posting of plaintiff's grievance on the employee bulletin board. (Compl., ¶¶ 20-21). Plaintiff contends that by publicizing the grievance, Leland Cable breached Newman's "right to privacy and liberty interests in violation of 42 U.S.C. §§ 1983; the Fourteenth Amendment to the U.S. Constitution; and Article 1 §§ 2, 3, 5, 9 of the Louisiana Constitution." (Compl., ¶ 20). Plaintiff further alleges that Cable posted the grievance in retaliation for plaintiff having filed "the complaint" which also violated the foregoing federal and state constitutional provisions. *Id.* at ¶ 21.[11]

In his brief, plaintiff argues that his loss of certification was personal to him, and that the publication of this information affected his relationship with his subordinates. (Pl. Opp. Memo., pg. 3).[12] In other words, plaintiff seems to argue that the publication diminished his reputation or standing in the workplace. However, "official publication of a stigmatizing charge against an employee, without discharge, is not of itself constitutionally prohibited, for, 'The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law.'" *In Re: Selcraig*, 705 F.2d 789, 795 (5th Cir. 1983) (quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160 (1976)). Reputation *per se* is not a property interest, and damage to reputation alone is not subject to redress under § 1983. *Id.*

With regard to plaintiff's claim that Cable publicized the grievance as a means to retaliate

---

[11]  By "complaint," plaintiff presumably meant grievance.

[12]  Albeit in his deposition, plaintiff acknowledged that his loss of certification would have become public information in any event once the grievance process was completed. (Pl. Depo., pg. 29, Def. Exh. B).

against plaintiff for having filed the grievance, the court notes that the First Amendment prevents "a government employer from taking actions which were designed to 'suppress the rights of public employees [to] participat[e] in public affairs.'"  *Rathjen v. Litchfield*,  878 F.2d 836, 841 (5th Cir. 1989) (quoting *Connick v. Myers*, 461 U.S. 138, 145-46, 103 S.Ct. 1684, 1689 (1983)). However, the First Amendment does not prohibit a government employer from reacting to an employee's expression that does not affect a matter of public concern.  *Id.*  Here, Newman's grievance regarding his lost certification and incentive pay was a personal matter not subject to First Amendment protection, and thus Cable's alleged retaliatory publication is not actionable under the U.S. Constitution.  *See, Day v. South Park ISD*, 768 F.2d 696, 703 (5th Cir. 1985) (employee's complaint or grievance to his supervisor on a personal matter is not a matter of public concern)*; Rathjen, supra*.[13]

Plaintiff next asserts a state tort law claim against Leland Cable for assault and battery and intentional infliction of emotional distress stemming from the physical incident and pseudo-discharge that occurred on February 4, 2005.  (Compl., ¶ 22).  An assault constitutes threats, with the present ability to carry out the threats such that one is placed in reasonable apprehension of receiving an injury.  *Johnson v. English*, 779 So.2d 876, 880 (La. App. 2d Cir. 2000).  "Battery is an intentional offensive contact with another person.  *Id*. (citing *Caudle v. Betts*, 512 So.2d 389 (La. 1987)).  The actor must have the intent to inflict an offensive contact without the other person's consent.  *Id*.

In his deposition, Newman stated that after he confronted Cable about posting his

---

[13]  Also, to the extent that plaintiff contends that defendants retaliated against him for assisting others with their own grievances, this too is not a matter of public concern.  *See, Altman v. Hurst*, 734 F.2d 1240, 1244 & n. 10 (7th Cir. 1984), cited by  *Brinkmeyer v. Thrall Independent School Dist.*, 786 F.2d 1291, 1296 (5th Cir. 1986).

grievance on the bulletin board, Cable became upset, snatched the grievance out of Newman's hand, pushed him against the wall, and told him that he was fired.  *Id*.   (Newman Depo. pg. 23; Pl. Exh. A).  One eyewitness saw Cable push or poke Newman in the chest.  (Affidavit of Frankie Jacobs; Pl. Exh. C).  However, another eyewitness, Will Davis, saw a "struggle" between the two men, before they were separated.  (Affidavit of Will Davis; Pl. Exh. B).  If credited, Davis's characterization of the incident suggests that the encounter was not entirely one-sided. Moreover, if Newman provoked Cable, he may not be entitled to recovery.  *See, Robinson v. Dunn*, 683 So.2d 894, 897 (citations omitted).[14]  Accordingly, genuine issues of material fact preclude summary judgment as to plaintiff's state law tort claims.[15]

In his fourth claim, plaintiff alleges that by disciplining him for minor improprieties, Cable deprived Newman of liberty interests in violation of the Fourteenth Amendment to the U.S. Constitution and Article 1 of the Louisiana Constitution.  (Compl., ¶ 23).  Plaintiff further alleges that by failing to address these inequities, the City of Monroe restricted Newman's liberty interests without due process of law in violation of the aforesaid federal and state constitutional provisions.  *Id*. at ¶ 24.  The court fairly interprets this claim as a challenge to the propriety of the January 3, 2005, tardiness warnings and the September 13, 2005, disciplinary violation which resulted in Newman's one week suspension, without pay.

---

[14]  Defendants argue that plaintiff did not suffer any physical injuries as a result of the assault and battery.  Indeed, plaintiff does not allege physical injury.  (Pl. MSJ Memo., pg. 8). Nonetheless, humiliation and embarrassment are compensable damages in tort. *Earle v. Wilhite*, 299 So.2d 393, 394 (La. App. 2d Cir. 1974).

[15]  The uncertainty regarding the verbal and physical exchange between Newman and Cable also counsels against summary resolution of the intentional infliction of emotional distress claim – especially when here, neither side addressed the elements of the claim.  *See generally, Johnson, supra* (assault and battery and intentional infliction of emotional distress claims went to jury).

"A constitutional deprivation of liberty occurs when there is some injury to employment or employment opportunities in addition to damage to reputation and a subsequent denial of procedural due process to redress that injury." *In re Selcraig*, 705 F.2d at796.  Assuming, without deciding, that the written warnings and suspension constitute a cognizable injury to employment, the City of Monroe had a grievance procedure in place to redress these alleged wrongs.  For instance, the City of Monroe Employee Handbook includes a three step grievance procedure to address issues not covered by a current labor agreement.  (Pl. Exh. D).  The procedure provides for at least two hearings, one before the department head, and one before the mayor.  *Id*.  The Collective Bargaining Agreement between the City of Monroe and the American Federation of State County and Municipal Employees, Local # 2388, AFL-CIO, also affords a three step grievance process with an opportunity for the aggrieved employee to present his side of the story.  (Pl. Exh. E).  Finally, the Monroe Code Personnel System utilizes a four- step grievance procedure for disputes arising out of the personnel merit system that are not covered by a current labor agreement.  (Pl. Exh. F).  It provides for hearings at the second and third steps, and a right to appeal to the personnel merit system commission at the fourth step.  *Id*.

The record is devoid of any evidence that Newman utilized the grievance process to challenge his January 3, 2005, tardiness warnings, and thus he cannot now protest that he was denied due process.  *Browning v. City of Odessa, Tex.*,  990 F.2d 842, 844 -845 (5th Cir. 1993) (citations omitted).  With respect to the September 13, 2005, suspension, Newman filed a grievance and was accorded a hearing.  (Pl. Exh. H; Def. Exh. O).  Although Newman's one week suspension was upheld, he received prior notice of the basis for the proposed employment

12

action, and was afforded an opportunity to respond to the allegations.  *Id.*[16]  Due process

mandates nothing further.  *See, Williams v. Texas Tech University Health Sciences Center*, 6,

F.3d 290, 292-293 (5th Cir. 1993).

Insofar as plaintiff claims that the January 3, 2005, warnings and September 13, 2005,

disciplinary action violated his substantive due process rights, plaintiff must show that the

government's deprivation of a property interest was "arbitrary or not reasonably related to a

legitimate governmental interest."  *Williams, supra.*  (citation omitted).  Plaintiff does not deny

that he was late five days over a two week period.  (*See*, Pl. Exh. I).  Instead, he contends that the

warning was excessive under the city's discipline procedures.  (Pl. Exh. D).  He nonetheless

concedes that other employees may have been disciplined for tardiness and substandard work.

(Pl. Opp. Memo., pg. 8).[17]  Moreover, as a supervisor, plaintiff was reasonably held to a higher

standard that his subordinates.  (*See*, Janway Affidavit; Def. Exh. C).  As to his one week

suspension, plaintiff does not dispute that he excavated in the wrong place; he simply maintains

that it was not his job and/or that it was not his second offense.  (Pl. Exh. H).  In either case,

there is no evidence showing that the city's decision was arbitrary or not related to a legitimate

governmental interest, *e.g.*, protecting the public fisc.[18]

In his fifth claim, plaintiff alleges that Cable deprived him of his opportunity to maintain

his occupational certifications, thus reducing his wages and implicating a constitutionally

---

[16]  There is no indication that Newman did not have an opportunity to respond before the suspension became effective, and there is no evidence that he ever appealed the denial to the third step.

[17]  Indeed, there is evidence that other employees were issued verbal and written warnings for tardiness, substandard work, and other violations.  (Affidavit of Cecil Janway, Jr., Def. Exh. C).

[18]  The erroneous excavation cost the city $ 800.00.  (Def. Exh. O).

protected property interest.  (Compl. ¶ 25).  Plaintiff further alleges that the City of Monroe's

failure to process the grievance challenging the loss of certification ratified the actions of Cable

and deprived Newman of his due process rights under federal and state constitutional provisions.

*Id*. at ¶ 26.

     Defendants contend that this claim is time-barred.  There is no federal statute of

limitations for actions brought under 42 U.S.C. § 1983, and therefore the courts borrow the

forum state's personal injury limitations period.  *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.

1992) (citation omitted).  In Louisiana, delictual actions are subject to a liberative prescription

period of one year.  La. Civ. Code Art. 3492.  Although state law governs the limitations period

and tolling exceptions, federal law determines when a cause of action arises.  *Jackson, supra*

(citation omitted).  Under federal law, a cause of action arises "when the plaintiff knows or has

reason to know of the injury which is the basis of the action."  *Id*.

     A cause of action under the due process clause arises at different times depending upon

the kind of claim at issue.  *See, Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 983

(1990).  A substantive due process claim becomes actionable when the wrongful action is taken.

*Id*.  In contrast, a procedural due process claim is not complete at the time the deprivation occurs;

it does not become ripe until the state fails to provide due process.  *Id*.

     Applying these considerations to the facts at hand, the undersigned finds that plaintiff's

due process claims against Cable for purportedly failing to allow him to attend training classes

during the 2004 qualification period (2002-2003) and for allegedly decreasing or failing to report

his continuing education hours to the certification board, are time-barred.  These acts necessarily

14

occurred prior to 2004,[19] and by July 20, 2004, at the latest, plaintiff was well aware of Cable's purported role in his loss of certification.  (*See*, July 20, 2004, letter from Newman to the City of Monroe Administration Department; Def. Exh. F).[20]  However, Newman did not file the instant suit until some eighteen months later.

The court further notes that any substantive due process challenge to the City of Monroe's decision to terminate Newman's incentive payments is also time-barred.  The record contains uncontroverted evidence that by January 14, 2005, the city began deducting amounts from plaintiff's paychecks to recoup incentive payments made to plaintiff after his loss of certification. (*See*, Memo. from Annette to Newman; Pl. Exh. G).  However, plaintiff did not file suit until over one year later.[21]

In contrast to the substantive due process claim, the undersigned finds that plaintiff's procedural due process challenge to the city's decision to withhold plaintiff's incentive pay is arguably timely.  The grievance process was still ongoing less than one year before suit was filed. Nonetheless, this claim still falls short.  Newman knew about his impending loss of incentive

---

[19]  Hours taken after December 31, 2003, did not count towards Newman's eligibility for the 2004-2005 certification cycle.  (Affidavit of Stacy Williams, Acting Administrator of the Operator Certification Program; Def. Exh. F).  Accordingly, any purported actions by Cable after December 31, 2003, would not have affected Newman's certification loss in 2004.

[20]  By all accounts, the actual decision to revoke Newman's certification was made by the Operator Certification Unit of the Louisiana Department of Health and Hospitals.  (*See*, September 17, 2004, letter from Stacy Williams to Newman; Pl. Exh. G).  Thus, to the extent plaintiff is challenging the actual revocation of his certifications, it appears that the proper party is not before the court.  In any event, any substantive due process claim against the State for the revocation of certification is time-barred.

[21]  Additionally, the city's decision cannot be deemed arbitrary or not reasonably related to a governmental interest, when the plain terms of the bargaining agreement between the city and the union call for the loss of incentive pay and repayment of any incentive pay received after certification is lost.  (*See*, Article XVI, Sec. 10 of Local 2388 bargaining agreement; Def. Exh. D).

pay, and had the opportunity to address this decision via the grievance policy. *See, Williams,*
*supra.*  Eventually, Newman filed a grievance, but there is no evidence that he proceeded beyond
step two of the process.  (*See*, Newman Depo., pg. 46; Pl. Exh. A).[22]  Of course, after failing to
utilize the full grievance process, plaintiff cannot now claim that he was denied due process.
*Browning, supra.*  Also, in accordance with the plain terms of the bargaining agreement, when
Newman lost his state certification, he lost his eligibility for incentive pay, and thus did not have
a cognizable property interest subject to procedural due process.  *See, Bledsoe v. City of Horn
Lake, Miss.*, 449 F.3d 650, 655 (5th Cir. 2006).

  In his sixth claim, plaintiff alleges that defendants continuously harassed and maltreated
him with the intent to cause him severe mental distress.  (Compl., ¶ 27).  Plaintiff does not
specify a federal statutory or constitutional basis for his harassment claim.  In his memorandum,
he cites a sexual harassment case brought under Title VII, 42 U.S.C. § 2000e-5, *Knox v. State of
Indiana*, 93 F.3d 1327 (7th Cir. 1996).  (Pl. Opp. Memo., pg. 8).  However, the instant case is not
a Title VII case, and there are no allegations or evidence of sexual or even racial harassment.[23]
To the extent that plaintiff alleges harassment as a result of exercising his First Amendment
rights, this issue was addressed above and found wanting.

  Plaintiff's seventh and final claim merely restates that defendants deprived him of his due
process rights and that he is entitled to punitive and exemplary damages.  (Compl., ¶¶ 28-32).  A

---

[22]  Newman did not recall going to the third step.  *Id.*

[23]  In fact, Newman and Cable's races do not appear in the record.
In the first paragraph of his complaint, plaintiff alleged that the suit was brought *inter alia*
pursuant to 42 U.S.C. § 1985.  However, § 1985 is not further cited in the complaint.  The court
observes that to be actionable, a conspiracy claim under § 1985 must be motivated by racial
animus.  *Word of Faith World Outreach Center Church, Inc. v. Sawyer*,  90 F.3d 118, 124 (5th
Cir. 1996).  Again, there are no allegations or evidence that the events complained of here were
motivated by racial animus.

municipality, however, is immune from punitive damages, and only individual defendants can be liable for exemplary damages.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762 (1981); *In re: Selcraig, supra.*  Moreover, having found that defendants did not transgress any federal constitutional provisions, plaintiff cannot recover punitive or exemplary damages under federal law.

In sum, the undersigned finds that there are no genuine issues of material fact and that defendants, Leland Cable and the City of Monroe, are entitled to judgment as a matter of law dismissing plaintiff's claims against them insofar as they arise under federal constitutional and statutory law.  Fed.R.Civ.P. 56.  The parties did not address plaintiff's claims under the Louisiana Constitution, and thus summary judgment regarding those issues would not be appropriate.[24]

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367.[25]  In fact, this is the general rule.  *Priester v. Lowndes County*,  354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).  The undersigned further observes that interpretation and application of the Louisiana Constitution to plaintiff's claims is within the particular province and expertise of the state courts.[26]  Accordingly, the twin interests

---

[24]  Plaintiff did cite a Louisiana state court decision that arguably recognized a public employee's privacy interest in the grievance process. *Broderick v. State, Dept of Environmental Quality*, 761 So.2d 713, 715 (La. App. 1st Cir. 2000).  However, the court also observed that the right to privacy must be analyzed on a case by case basis.  *Id*.

[25]  In the case *sub judice*, there is no indication that the court may exercise diversity jurisdiction, 28 U.S.C. § 1332.

[26]  The state courts are also better acquainted with assault and battery and intentional infliction of emotional distress claims.

of comity and efficiency dictate that the remaining state law claims be dismissed without prejudice, leaving plaintiff free to pursue those claims in state court should he so desire.[27]

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for summary judgment filed by plaintiff, Isaac Newman, [doc. # 18] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the motion for summary judgment filed by defendants, Leland Cable and the City of Monroe [doc. # 21] be **GRANTED IN PART**, and that plaintiff's claims arising under the laws and Constitution of the United States be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's remaining claims arising under the constitution and tort laws of the State of Louisiana be **DISMISSED, without prejudice**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

---

[27] The limitations period is tolled for a minimum of 30 days after dismissal.  *See*, 28 U.S.C. § 1367(d).

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 7th day of December, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE